**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In the Matter of

VINCENT D. IOCOVOZZI,

                Debtor.

Case No.: 13-62035
Chapter 13

**OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**
**DATED DECEMBER 19, 2013**

      BonNette L. Iocovozzi is the wife of the Debtor. She and the Debtor are parties to an action for divorce brought by the Debtor in New York State Supreme Court, Herkimer County. Proceedings in that action have been stayed pursuant to 11 USC §362. Mrs. Iocovozzi is the holder of a liquidated priority claim listed on Schedule E; an unliquidated priority claim for maintenance and an unliquidated claim for equitable distribution of marital property. Ms. Iocovozzi through her attorney, objects to confirmation of the Debtor's Chapter 13 Plan, dated December 19, 2013, on the following grounds.

**The Chapter 13 Petition and the Chapter 13 Plan were not filed in good faith.**

    1.    The Debtor and Mrs. Iocovozzi were married on November 1, 2003. At the time of the marriage the parties entered into an agreement whereby each waived certain property rights that would have accrued on account of their marriage. In 2009 Debtor commenced an action for divorce on fault grounds in New York State Supreme Court, Herkimer County. That action was subsequently discontinued and on or about May 24, 2011, Debtor commenced a new action alleging that the relationship between the parties had irretrievably broke down for a period in excess of six months. As part of the requested relief Debtor sought enforcement of the terms of the 2003 prenuptial agreement.

1

2.     Thereafter Mrs. Iocovozzi served an answer and counterclaim in which she requested spousal maintenance, equitable distribution of marital property and other relief. On or about August 10, 2012 the Honorable Erin P. Gall, J.S.C., issued an order declaring that the prenuptial agreement was unenforceable. On or about October 9, 2013 Justice Gall issued a second order directing Debtor to pay $7,500 as interim expert witness fees and $15,000 as interim counsel fees and further ordered that the parties and their counsel appear at a compliance conference on December 11, 2013.

3.     Debtor did not pay the interim fees or attend the court ordered compliance conference. Instead, he commenced this Chapter 13 proceeding thereby frustrating the state court proceeding that he had brought, but which had suddenly gone sour.

4.     According to the Debtor's Statement of Financial Affairs, aside from the divorce case that he commenced, the only litigation that he has been involved in in the recent past is a Pennsylvania collection action that may have gone to judgment in 2011. Although he has a number of secured debts it appears that no repossessions or foreclosures had been commenced at the time he filed his petition.

5.     According to Schedules I and J Debtor has surplus income of at least $600 per month. Upon information and belief Debtor made no effort to pay the court ordered interim fees in installments. Instead he sought to avoid that obligation and his duty to participate in discovery by filing a bankruptcy petition.

6.     On or about February 10, 2012, in the course of the pending matrimonial action, Debtor filed a sworn Statement of Net Worth in which he calculated his net worth at $623,000. He included on that document a note to Directors Choice CU in the amount of $100,000 which has apparently now been reduced to $78,056 and a student loan obligation in the amount of $25,000

which apparently has been paid off.  He did not list any obligation to his mother Rose Seppi, or to his sister, Mary Iocovozzi, both of whom are listed as creditors on Schedule D and Schedule F.

7. On or about December 12, 2013, just eight days prior to the commencement of this case, debtor conveyed a mortgage to Mary Iocovozzi.  The recording created a lien on Debtor's property located at 203 Second Avenue, Frankfort, New York.  According to the terms of the mortgage Debtor is obligated to pay Mary Iocovozzi the sum of $5,000 per year with interest at 4% per annum until 2018 at which time a final payment in the amount of $5,524.96 is due.  This debt is not listed on the schedules filed with the Chapter 13 Petition and the Debtor did not disclose how any funds he received in relation to the mortgage were disbursed.  The payment of this obligation is not contemplated in the Debtor's proposed plan.

**The Chapter 13 Plan is not feasible.**

8. It is apparent that the Debtor commenced the bankruptcy case primarily or solely to delay the state court divorce action.  The Debtor did not estimate his potential liability for maintenance or equitable distribution and filed his petition as a pre-emptive strike to nullify any relief Mrs. Iocovozzi may be entitled to in the matrimonial case.

9. Debtor's Chapter 13 Plan proposes regular monthly payments of $600 for three years or a total of $24,600 with a minimum of $21,600 going to unsecured creditors who supposedly will be paid in full.  On Schedule E, however, debtor acknowledges priority unsecured claims in the amount of $23,000 which must be paid in full, with interest, over the life of the plan. On its face the Chapter 13 Plan does not provide for the payment in full of the Chapter 13 trustee's commissions, Debtor's attorney's fees and the current domestic support obligation to say nothing of potential award of permanent or interim maintenance and a probable distributive award of

3

equitable distribution.

10. In order to make up any shortfall in plan payments Debtor anticipates contributing the net proceeds to be acquired from the sale of property in the Town of Exeter and the net proceeds from an anticipated malpractice lawsuit against his former matrimonial attorney. The acquisition of any excess funds from those sources is speculative at best. The Exeter property is valued at $350,000 and is encumbered by a mortgage in the amount of $495,000. Given today's real estate market it is unlikely that Debtor will realize any proceeds after deduction of the costs of sale. Upon information and belief Debtor has not commenced any lawsuit against his former attorney and does not have the funds to hire an attorney to pursue such a course of action.

11. The Debtor's reported income is not sufficient to make payments on his secured obligations, pay administrative and priority claims and make any kind of meaningful payment to his general unsecured creditors.

**V.J. Iocovozzi Funeral Home, Inc. is Debtor's alter ego and its assets and net income must be considered part of the bankruptcy estate.**

12. The Debtor is the sole stockholder of V.J. Iocovozzi Funeral Home, Inc., a business corporation that according to its 2012 federal tax returns owned more than $1,000,000 worth of assets before deducting depreciation. Upon information and belief the Debtor is also the corporation's sole director and officer and has total control over the corporate affairs including the payment of compensation to officers and employees. The Debtor resides in an apartment located above the Frankfort funeral parlor and benefits from the fact that the corporation pays all of the carrying costs of the building except for some minor items such as renter's insurance ($50 per month), small repairs ($80 per month) and satellite TV ($110 per month) which are listed on Schedule J. The corporation also pays the expenses for all of the Debtor's motor vehicles

4

including the Harley-Davidson motorcycle.

13. At the first meeting of creditors the Debtor testified that he did not have a bank account or a credit card. He stated that the business pays most of his personal expenses and that he uses the business checking account when necessary. In addition, The Debtor uses the business checking account as a depository for the income he receives from renting the Town of Exeter vacation home, which income is not reported on Schedule I.

14. The Debtor is also the sole proprietor of an entity known as Twin Oaks Memorials which the debtor has valued at $20,000. Upon information and belief, besides the other assets, Twin Oaks (actually the Debtor) owns a laser headstone engraver that was purchased for an amount in excess of $100,000. That asset was not separately valued on Schedule B.

15. The debtor has so co-mingled his financial affairs with that of the corporation that he and the business should be considered one entity for the purposes of this bankruptcy case.

**The Proposed Chapter 13 Plan is not in the best interests of creditors.**

16. The Debtor has failed to provide a liquidation analysis.

17. An examination of the Statement of Net Worth filed in the most recent matrimonial action concludes that the Debtor has a net worth of $623,000. The Summary of Schedules indicates that the Debtor has assets worth about $900,000 and liabilities of $754,701.03. The Debtor, however, has not included his potential equitable distribution liability or his potential liability to pay maintenance for an unknown period of time. These liabilities should be estimated and included in the Debtor's Chapter 13 Plan.

**Conclusion**

Mrs. Iocovozzi will move this Court for an order lifting the automatic stay to allow the state court to determine all issues in the matrimonial action including those issues that affect property of the bankruptcy estate, to wit: maintenance and equitable distribution. Until these issues are resolved the Court should not confirm any Chapter 13 Plan proposed by the Debtor.

5

**WHEREFORE**, Movant respectfully requests that Confirmation be denied and for such further relief as the Court deems appropriate.

Dated: March 5, 2014                    /s/ Thomas P. Hughes
                                        Thomas P. Hughes, Esq.
                                        Attorney for BonNette Iocovozzi
                                        Office and Post Office Address
                                        23 Oxford Road
                                        New Hartford, New York  13413
                                        Telephone No.:  (315) 223-3043
                                        Bar Roll No.:  103019