| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>NORTHERN DISTRICT OF NEW YORK | Hearing Date:  April 17, 2014<br>Hearing Time:  10:30 am |

In re:

Vincent D. Iocovozzi
     Debtor

Chapter 13
Case No. 13-62035-6-dd

### REPLY TO BONNETTE L. IOCOVOZZI'S OBJECTION TO CONFIRMATION

The Debtor, Vincent D. Iocovozzi, through his attorney, Carol Malz, herein replies to the Objection to Confirmation of BonNette L. Iocovozzi and states as follows:

<u>The Chapter 13 Petition and the Chapter 13 Plan were filed in good faith</u>.

1. The Debtor is not going to rehash the divorce proceedings here. His Plan provides for the interim expert witness fees and interim counsel fees awarded by Judge Gall, total $23,000.00. His Plan also provides that if those awards are reversed on appeal, that the monies paid over to BonNette L. Iocovozzi will be recouped and paid over into the Plan.

2. The Meeting of Creditors was held on January 27, 2014 in Utica, New York. Present were the Debtor, the undersigned, the Chapter 13 Trustee, David Egighan on behalf of GPO Federal Credit Union, and Attorney Thomas P. Hughes on behalf of BonNette L. Iocovozzi.

3. At the Meeting of Creditors, the Debtor, through his counsel, offered to sign a consent order lifting the automatic stay for the divorce proceedings, even though counsel believed that the stay did not apply. This offer was refused by Attorney Hughes, who stated that he would prefer to bring a Motion for Relief from the Automatic Stay.

4. The Debtor's bankruptcy was filed on December 20, 2013 for many reasons, much of which can be gleaned from the Debtor's Schedules and Statement of Financial Affairs.

5. Why else did the Debtor file? The judgment creditor Morris & Clemm had sent a wage garnishment order to the funeral home through the Sheriff's Office. Contrary to what the Objector believes, Morris & Clemm was not an old judgment sitting around. They had just transcribed the judgment with the Herkimer County Clerk's Office and started collection efforts.

6. Negotiations had been ongoing with GPO Federal Credit Union, with no success. A foreclosure proceeding was about to be commenced.

7.  Negotiations to sell the funeral home had also come to a halt, as agreement could not be reached with GPO Federal Credit Union, whose mortgage is on the funeral home and the property in the Town of Exeter.

8.  Thus again, contrary to what the Objector believes, the Debtor was facing foreclosure, and his business was at risk.  Notably, BonNette L. Iocovozzi is a joint obligor on the GPO Federal Credit Union mortgage, but has not paid on it and left it to the Debtor to find a solution.

9.  The above was disclosed at the Meeting of Creditors, where Attorney Hughes questioned the Debtor.

10.  Prior to realizing that he had to file bankruptcy, the Debtor had been hopeful of selling his business, and at a price that could solve all his financial problems.  This was unrealistic.  Not only was GPO Federal Credit Union unwilling to renegotiate the loan, but the potential buyer, Vincent Enea, was advised by his attorney that the business was overpriced.

11.  It has taken awhile for the Debtor to realize and accept the decline in the value of his business and properties.

12.  In order to do a Chapter 13 bankruptcy, the Debtor needed increased income.  As stated on his Schedule I, he anticipated rental income of $3,000.00 per month from Vincent Enea for the use of his facilities, which he had yet to ask Mr. Enea for.  Fortunately, Mr. Enea agreed to it.

13.  Without that $3,000.00 per month in rent, the Debtor's monthly budget would be running in the red.  Contrary to what the Objector believes, the Debtor did not have the net $600.00 in his budget (Schedule J) prior to January 2014.

<u>An Amended Chapter 13 Plan will be submitted</u>.

14.   As stated at the Meeting of Creditors, the Debtor is working on amending his Chapter 13 Plan.  Appraisals have to be obtained, in addition to the Debtor making sure that all creditors and debts are listed.

15.  The Debtor's interest in V.J. Iocovozzi, Inc. is properly listed on Schedule B.  The Debtor acknowledged that he is the sole owner.

16.  Upon information and belief, the Debtor did not lose his right to continue to claim depreciation in property over the years based on their original purchase prices, even though they were subsequently damaged or destroyed in floods, or by wear and tear.  Such questions are for the Debtor's tax preparer.

17. The Debtor testified about the laser headstone engraver at the Meeting of Creditors, where Attorney Hughes questioned him about it. Schedule B specifies that the Debtor is the sole proprietor of Twin Oaks Memorials, acquired in 1993, owns equipment and inventory ---- which includes this laser headstone engraver. The Objector has provided only a hopeful speculation of its value. It is not worth anything near that.

18. The Debtor does not dispute that he could decide to liquate the V.J. Iocovozzi, Inc. and/or Twin Oaks Memorials. It is something that he is considering as his health and the market for funerals continues to decline.

19. Upon information and belief, maintenance is not an issue in the divorce proceeding. The only possible entitlement is equitable distribution.

20. The Debtor has no objection to a lifting of the automatic stay as to the matrimonial action --- he very much wants to be divorced. He has now spent more years in the divorce proceeding than he had in the relationship.

21. The Debtor objects to any staying of the confirmation of his plan, other than for the amendments that he is working on.

22. It is in the best interests of creditors that the property of the Debtor be administered in an orderly manner, through the bankruptcy court, then haphazardly through competing claims outside bankruptcy.

WHEREFORE, the Debtor respectfully requests that the objections of BonNette L. Iocovozzi be dismissed.

Dated: March 18, 2014

/s/ Carol Malz
_____
Carol Malz, Esq.  (NYND 510644)
554 Main Street
P.O. Box 1446
Oneonta, NY  13820
(607) 432-6932