**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In the Matter of

VINCENT D. IOCOVOZZI,

          Debtor.

Case No.: 13-62035
Chapter 13

**OBJECTION TO CONFIRMATION OF FIRST AMENDED**
**CHAPTER 13 PLAN DATED MAY 29, 2014**

Creditor BonNette L. Iocovozzi, the wife of the Debtor, objects to confirmation of the proposed First Amended Chapter 13 Plan on the grounds stated below. She incorporates by reference the objections to the original Chapter 13 Plan.

**This Chapter 13 case was not commenced in Good Faith and the Amended Chapter 13 Plan was not filed in Good Faith.**

1. As noted in the previously filed objection to confirmation the debtor and Mrs. Iocovozzi are the plaintiff and defendant respectfully in a divorce action pending in New York State Supreme Court, Herkimer County

2. The Debtor and Mrs. Iocovozzi were married on November 1, 2003. At that time the parties entered into an agreement whereby each waived certain property rights that would have accrued on account of their marriage. In 2009 Debtor commenced an action for divorce on fault grounds in New York State Supreme Court, Herkimer County. That action was subsequently discontinued and on or about May 24, 2011, after the enactment of a true New York "no fault" divorce law, Debtor commenced a new action alleging that the relationship between the parties had irretrievably broke down for a period in excess of six months. As part of the requested relief Debtor sought enforcement of the terms of the 2003 prenuptial agreement.

3. Thereafter Mrs. Iocovozzi served an answer and counterclaim in which she requested spousal maintenance, equitable distribution of marital property and other relief. On or

about August 10, 2012 the Honorable Erin P. Gall, J.S.C. issued an order declaring that the prenuptial agreement was unenforceable. On or about October 9, 2013 Justice Gall issued a second order directing Debtor to pay $7,500 as interim expert witness fees and $15,000 as interim counsel fees and further ordered that the parties and their counsel appear at a compliance conference on December 11, 2013.

4. Debtor did not pay the interim fees or attend the court ordered compliance conference. Instead, he commenced this Chapter 13 proceeding thereby frustrating the state court proceeding that he had brought, but which had suddenly gone sour.

5. According to the Debtor's Statement of Financial Affairs, aside from the divorce case that he commenced, the only litigation that he has been involved in in the recent past is a Pennsylvania collection action that may have gone to judgment in 2011. Although he has a number of secured debts it appears that no repossessions or foreclosures had been commenced at the time he filed his petition.

6. According to the original Schedules I and J Debtor had surplus income of at least $600 per month. Upon information and belief Debtor made no effort to pay the court ordered interim fees in installments. Instead he sought to avoid that obligation and his duty to participate in discovery by filing a bankruptcy petition. Debtor has recently amended Schedules I and J to reveal additional income, but has still neglected to report the amount of money paid by Debtor's funeral business on a regular basis for debtor's household expenses as required by 11 USC §101(10A)[B] and 11 USC §1325.

7. On or about February 10, 2012, in the course of the pending matrimonial action, Debtor filed a sworn Statement of Net Worth in which he calculated his net worth at $623,000. He included on that document a note to Directors Choice CU in the amount of $100,000 which has apparently now been reduced to $78,056 and a student loan obligation in the amount of $25,000 which apparently has been paid off. He did not list any obligation to his mother Rose Seppi, or

to his sister, Mary Iocovozzi, both of whom are listed as creditors on Schedule D and Schedule F. Since these creditors are insiders the payment of their claims should be subordinated and only paid after all other claims have been paid in full.

8. On or about December 12, 2013, just eight days prior to the commencement of this case, debtor conveyed a mortgage to Mary Iocovozzi. The recording created a lien on Debtor's property located at 203 Second Avenue, Frankfort, New York. According to the terms of the mortgage Debtor is obligated to pay Mary Iocovozzi the sum of $5,000 per year with interest at 4% per annum until 2018 at which time a final payment in the amount of $5,524.96 is due. This debt was not listed on the original schedules filed with the Chapter 13 Petition and the Debtor did not disclose how any funds he received in relation to the mortgage were disbursed.

**The Amended Chapter 13 Plan is not feasible.**

9. It is apparent that the Debtor commenced the bankruptcy case primarily or solely to delay the state court divorce action. The Debtor did not estimate his potential liability for maintenance or equitable distribution and filed his petition as a pre-emptive strike to nullify any relief Mrs. Iocovozzi may be entitled to in the matrimonial case.

10. Debtor's Amended Chapter 13 Plan proposes monthly payments of $600 for five months followed by 55 installments of $2,100 each for a total of $137,500. The Plan assumes that amount will be augmented by the net proceeds of a speculative legal malpractice action. Those proceeds, however, are earmarked to pay a potential equitable distribution claim which was not listed on Schedule F. Also omitted on Schedule F are potential claims of secured creditors whose claims may be bifurcated. In any event, it is not possible for the debtor to pay all unsecured claims in full while at the same time paying trustee's commissions, attorney fees, the admitted priority DSO claim, the arrears on the Seppi mortgage, the outstanding real property tax claims and regular payments on the secured obligations. In addition, the Debtor faces potential liability for post-petition spousal support which has not been factored in his income and expense calculations.

**V.J. Iocovozzi Funeral Home, Inc. is Debtor's alter ego and its assets and net income must be considered part of the bankruptcy estate.**

11.  The Debtor is the sole stockholder of V.J. Iocovozzi Funeral Home, Inc., a business corporation that according to its 2012 federal tax returns owned more than $1,000,000 worth of assets before deducting depreciation.  Upon information and belief the Debtor is also the corporation's sole director and officer and has total control over the corporate affairs including the payment of compensation to officers and employees.  The Debtor resides in an apartment located above the Frankfort funeral parlor and benefits from the fact that the corporation pays all of the carrying costs of the building except for some minor items such as renter's insurance ($50 per month), small repairs ($80 per month) and satellite TV ($110 per month) which are listed on Schedule J.  The corporation also pays the expenses for all of the Debtor's motor vehicles including the Harley-Davidson motorcycle.

12.  At the first meeting of creditors the Debtor testified that he did not have a bank account or a credit card.  He stated that the business pays most of his personal expenses and that he uses the business checking account when necessary.  In addition, The Debtor uses the business checking account as a depository for the income he receives from renting the Town of Exeter vacation home, which income is not reported on Schedule I.

13.  The Debtor is also the sole proprietor of an entity known as Twin Oaks Memorials which the debtor has valued at $20,000.  Upon information and belief, besides the other assets, Twin Oaks (actually the Debtor) owns a laser headstone engraver that was purchased for an amount in excess of $100,000.  That asset was not separately valued on Schedule B.

14.  The debtor has so co-mingled his financial affairs with that of the corporation that he and the business should be considered one entity for the purposes of this bankruptcy case.

**The Amended Chapter 13 Plan is not in the best interests of creditors.**

15.     The Debtor has failed to provide a liquidation analysis.

16.     An examination of the Statement of Net Worth filed in the most recent matrimonial action concludes that the Debtor has a net worth of $623,000. The Summary of Schedules indicates that the Debtor has assets worth about $900,000 and liabilities of $754,701.03. The Debtor, however, has not included his potential equitable distribution liability or his potential liability to pay maintenance for an unknown period of time. These liabilities should be estimated and included in the Debtor's Amended Chapter 13 Plan.

**The Amended Plan Provides That Non-Essential Assets Remain Property of the Estate until the Plan is Completed.**

17.     The debtor owns unencumbered real estate located at 206-212 Mary Street, Frankfort; 327 S. Washington Street, Herkimer; 335 S. Washington Street, Herkimer and Cemetery Street, Frankfort, which parcels are not related to the debtor's funeral home business. In addition, the debtor owns a 2003 Harley-Davidson motorcycle which is a luxury item and a 2008 Dodge Ram pick-up truck which does not appear to be used in the funeral home business or for any other essential purpose. Since these items are not exempt and are not being liquidated under the plan and are actually financially burdensome to the estate, there are no justifiable reasons that they should remain property of the bankruptcy estate. Instead, the assets should be surrendered or should revert to the debtor and become available to satisfy any outstanding domestic support obligations.

**The Amended Plan Does Not Estimate The Equitable Distribution Claim**

18.     The debtor did not listed BonNette L. Iocovozzi's equitable distribution claim on the schedules attached to his petition. He did, however, acknowledge such a claim in his Amended Chapter 13 Plan. The plan indicates that all general unsecured claims will be paid in full, but does not reveal the amount of the equitable distribution claim or indicate how it will be paid except insofar as proceeds from a speculative lawsuit become available. Without such information it is

impossible to determine whether the plan is feasible. This lack of information also prejudices the creditor since she cannot determine what will be paid to her under the plan.

19. The plan also fails to provide for a claim for maintenance.

**The Amended Plan Does Not Provide For Paying Interest on The Priority Claims**

20. The debtor acknowledges that the debt created by the Order of Supreme Court, Herkimer County, is a domestic support obligation entitled to priority status under the Bankruptcy Code. The Amended Plan allows the claim and indicates that it will be paid in full. The plan does not, however, provide for the payment of interest on the claim even though under 11 USC § 101 (14A) the term "domestic support obligation" includes accrued interest.

**The Lifting of the Automatic Stay is Meaningless if the Amended Plan Does Not Provide For the Immediate Payment of Interim Attorney Fees and Expert Witness Fees.**

21. Under state law BonNette L. Iocovozzi is entitled to an award of equitable distribution of marital property upon the dissolution of her marriage if she can prove acquisition of property or its appreciation in value during the course of the marriage. She may also be entitled to an award of maintenance. The debtor's financial affairs, however, are so confused and so intertwined with those of his corporation that not even the Chapter 13 trustee can resolve the liquidation issue with any degree of certainty. In addition, the scheduled property values are speculative and the debtor has engaged in at least one unscheduled mortgage transaction. One of the consequences of this Chapter 13 filing is the inability of BonNette L. Iocovozzi to fund the retention of professional services necessary to assist her in meeting her burden of proof in the pending matrimonial action which was commenced by the debtor.

22. It is disingenuous for the debtor to state that he will consent to an order lifting the automatic stay unless that order permits BonNette L. Iocovozzi and the state court to enforce the order directing the payment of temporary fees and further permits the state court to determine the issues of equitable distribution and maintenance.

**Conclusion**

Mrs. Iocovozzi has moved this Court for an order lifting the automatic stay to allow the state court to determine all issues in the matrimonial action including those issues that affect property of the bankruptcy estate, to wit: maintenance and equitable distribution. Until these issues are resolved the Court should not confirm any Chapter 13 Plan proposed by the Debtor.

**WHEREFORE**, Movant respectfully requests that Confirmation be denied and for such further relief as the Court deems appropriate.

Dated: July 14, 2014

/s/ Thomas P. Hughes
Thomas P. Hughes, Esq.
Attorney for BonNette Iocovozzi
Office and Post Office Address
23 Oxford Road
New Hartford, New York 13413
Telephone No.: (315) 223-3043
Bar Roll No.: 103019